JS 44 (Rev. 08/18)          JS          **CIVIL COVER SHEET**          19-5909

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| BLANK ROME LLP | ANDRUS WAGSTAFF, P.C. |

**(b)** County of Residence of First Listed Plaintiff    PHILADELPHIA, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    JEFFERSON COUNTY, CO
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Frank A. Dante, Esq., One Logan Square, 130 North 18th Street, Philadelphia, PA 19103 (215) 569-5390

Attorneys *(If Known)*
Vance Andrus, Esq,, Aimee Wagstaff, Esq., 7171 W. Alaska, Drive, Lakewood, CO 80226 , (303) 376-6360

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question
*(U.S. Government Not a Party)*

☐ 2 U.S. Government Defendant

☒ 4 Diversity
*(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*          Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 485 Telephone Consumer Protection Act |
| ☒ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.
Brief description of cause:
This is an action for declaratory judgment seeking payment of attorney's fees

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $489, 500 plus pre- and post-judgment interest, attorneys fees and costs of suit
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE    December 16, 2019          SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

DEC 16 2019



**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ One Logan Square 130 North 18th Street Philadelphia, PA 19103 _____

Address of Defendant: _____ 7171 W. Alaska, Drive, Lakewood, CO 80226 , (303) 376-6360 _____

Place of Accident, Incident or Transaction: _____ Philadelphia, PA _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 12/16/2019 _____   *Must sign here* _____   87888
_____   _____
*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.   *Federal Question Cases:***

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☐ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
*(Please specify):* _____

**B.   *Diversity Jurisdiction Cases:***

☑ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury (Please specify): _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
*(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Frank A. Dante, Esq _____, counsel of record *or pro se plaintiff*, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 12/16/2019 _____   *Sign here if applicable* _____   87888
_____   _____
*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

DEC 16 2019

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

BLANK ROME, LLP                     :                    CIVIL ACTION

v.                                  :                         19   5909

ANDRUS WAGSTAFF, P.C.               :                    NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.            ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                             ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court.  (See reverse side of this form for a detailed explanation of special
management cases.)                                                                ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.  (☑)

| 12/16/2019 | Frank A. Dante, Esq. | PLAINTIFF |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-569-5390 | 215-832-5390 | Dante@blankrome.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

DEC 16 2019

JS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BLANK ROME LLP,   :
    : 
    *Plaintiff,*   :
  vs.    :   Case No.
    :
ANDRUS WAGSTAFF, P.C.,   :
    :    19   5909
    *Defendant.*   :
    :

### COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Blank Rome LLP ("Blank Rome"), by and through its attorneys, files this Complaint for Declaratory Judgment against Defendant Andrus Wagstaff, P.C. ("Andrus Wagstaff"), and avers as follows:

### NATURE OF THE ACTION

1.  This is an action for declaratory judgment seeking payment of attorney's fees to Plaintiff Blank Rome LLP, a law firm. The attorney's fees were earned by Blank Rome in its representation of Defendant Andrus Wagstaff, P.C., also a law firm, in a dispute involving the allocation of common benefit attorney's fees in the recently-settled pelvic mesh multi-district litigation ("MDL") venued in West Virginia. As a result of the legal services it performed on behalf of Andrus Wagstaff, Blank Rome was able to increase its client's common benefit attorney's fee award by $4,895,000. Consequently, pursuant to the clear, unequivocal language of the parties' fee agreement—which provides that Blank Rome is entitled to a performance incentive fee in an amount equal to ten percent of any increase in Andrus Wagstaff's common attorney's benefit fee award over $4,000,000—Blank Rome is entitled to a fee of $489,500 for the work it performed on behalf of Andrus Wagstaff. To date, however, Andrus Wagstaff has continued to refuse to provide

payment to Blank Rome for the full amount of its performance incentive fee, going so far as to attempt to insert new language into the parties' agreement—in violation of basic rules of contract construction—in an effort to avoid paying Blank Rome's fee in its entirety.

## PARTIES

2.      Plaintiff Blank Rome LLP is a Pennsylvania limited liability partnership registered in the Commonwealth of Pennsylvania, with its principal place of business located at One Logan Square, 130 North 18th Street, Philadelphia, PA 19103.

3.      Defendant Andrus Wagstaff, P.C. is a Colorado professional corporation registered with the State of Colorado, with its principal place of business located at 7171 W. Alaska Drive, Lakewood, CO 80226.

## JURISDICTION & VENUE

4.      This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

5.      This Court has jurisdiction under 28 U.S.C § 1332 because there is complete diversity of citizenship between Plaintiff and Defendant, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred within this Judicial District, as this dispute centers on work that was performed by Blank Rome attorneys primarily in Philadelphia, Pennsylvania.

## FACTS

### The Underlying Pelvic Mesh MDL

7.     Andrus Wagstaff was one of the primary plaintiff's law firms that was involved in the MDL that arose from defective transvaginal mesh implants that were used to treat medical conditions known as pelvic organ prolapse and stress urinary incontinence, and which allegedly caused thousands of women to suffer severe pain, organ damage, and other complications because of the defective nature of these devices.

8.     In 2012, all lawsuits filed in connection with the defective pelvic mesh products at issue were consolidated in a single MDL venued in the United States District Court for the Southern District of West Virginia, Case No. 2:12-md-02326 ("Pelvic Mesh MDL").

9.     On November 12, 2018, the Common Benefit Fee and Cost Committee ("FCC") appointed by the Court in the Pelvic Mesh MDL filed its preliminary written recommendation pertaining to the allocation of common benefit attorney's fees to the law firms that were responsible for representing injured plaintiffs in the litigation, including Andrus Wagstaff.

10.     The FCC's preliminary written recommendation allocated $8,715,000 in common benefit attorney's fees to Andrus Wagstaff.

11.     Shortly after the FCC's preliminary written recommendation was filed, Andrus Wagstaff retained Blank Rome to assist it in prosecuting an objection to the preliminary written recommendation.

12.     In performing its legal services on behalf of Andrus Wagstaff, Blank Rome successfully negotiated an increase of Andrus Wagstaff's common benefit attorney's fee award in the Pelvic Mesh MDL in the amount of $4,895,000.

### The Engagement Letter

13.     The engagement letter dated November 9, 2018 and signed by Andrus Wagstaff on January 9, 2019 stated that Blank Rome would represent Andrus Wagstaff in connection with the prosecution of its objection to the FCC's preliminary written recommendation regarding the allocation of common benefit attorney's fees in the Pelvic Mesh MDL.[1]

14.     The engagement letter provided that Blank Rome's base fees would be based on the time devoted to the matter by the firm's attorneys, paralegals, and other legal staff at 75% of their respective hourly rates in effect at the time the services were performed in connection with Blank Rome's representation of Andrus Wagstaff.

15.     In other words, the engagement letter set forth the parties' agreement that Andrus Wagstaff would receive an across-the-board 25% discount of Blank Rome's standard hourly base fees.

16.     Importantly, the engagement letter also provided that the parties agreed upon an incentive fee payment, in addition to Blank Rome's discounted base hourly fees, which was to operate as follows:

- If Andrus Wagstaff's original allocation was increased between $1,000,000 and $2,000,000, then Blank Rome was to also be paid, in addition to its hourly rate, 3% of that increase.

- If Andrus Wagstaff's original allocation was increased between $2,000,001 to $4,000,000, then Blank Rome was to also be paid, in addition to its hourly rate, 6% of that increase.

---

[1] A true and correct copy of the parties' Engagement Letter is attached as Exhibit A.

- If Andrus Wagstaff's original allocation was increased by more than $4,000,000, then Blank Rome was to also be paid, in addition to its hourly rate, 10% of that increase.

17.     The engagement letter also stated that: "Fees, disbursements, and other charges will be billed monthly and are payable upon presentation. *We expect prompt payment*. We are entitled to interest of 6% per annum on all invoices that are not paid within thirty days." (Emphasis added.)

### Blank Rome's Unpaid Performance Incentive Fee

18.     At the time that Blank Rome was retained to represent Andrus Wagstaff, the FCC had allocated a total of $8,715,000 in common benefit attorney's fees to Andrus Wagstaff.

19.     As a result of the legal services performed by Blank Rome, Andrus Wagstaff was ultimately awarded $13,000,000 in common benefit attorney's fees – an increase of $4,285,000 over the original allocation of Andrus Wagstaff's award amount.

20.     In addition, after Blank Rome was retained, the entire collective fund of fees that was to be distributed as common benefit attorney's fees in the litigation increased from $350,000,000 to $400,000,000; as a result of Blank Rome's negotiation with the FCC and the Special Master appointed to the case, this resulted in an additional $610,000 allocation to Andrus Wagstaff from the collective fund.

21.     Combined, as a result of Blank Rome's work, Andrus Wagstaff's total common benefit attorney's fee award increased by $4,895,000.

22.     Consequently, because Blank Rome was responsible for increasing Andrus Wagstaff's fee award by more than $4,000,000, pursuant to the clear, unequivocal terms of the parties' engagement letter—which provided that Blank Rome was entitled to a performance incentive fee in the amount of ten percent of any increase over $4,000,000—Blank Rome is entitled to a performance incentive fee in the amount of $489,500.

5

23.     Despite the fact that it is beyond argument that Blank Rome is entitled to a performance incentive fee of $489,500, Andrus Wagstaff has continued to refuse to pay Blank Rome the full amount of this incentive fee.

24.     On October 8, 2019, Aimee Wagstaff ("Attorney Wagstaff"), a founding partner of Andrus Wagstaff, wrote the following email to Laurence Shtasel, an attorney at Blank Rome who had significant involvement in representing Andrus Wagstaff in the common benefit attorney's fee dispute matter:

> Hi Larry,
>
> The TVM CB money has arrived in our account and we want to distribute to you the performance bonus. The original distribution was based on a collective fund of $350,000,000. Our original allocation was $8,715,000 of CB fees. Prior to hiring BR, we were able to negotiate an increase of one million dollars in fees, or $9,175,000. As documented below, you helped negotiate an increase to $13,000,000. Meaning, you helped increase our award by $3,285,000. Thank you :-) Based on our agreement, BR's performance bonus (in addition to the hourly rate we have paid) is:
>
> - 3% of the first 2 million increase = $60,000
> - 6% of the remaining $1.285 million increase = $77,100
> - Total= $137,000
>
> Because of appeals delaying the distribution, the pot grew to just over $400,000,000 prior to distribution. However, because our deal does not include future payments, we believe that small increase is not subject to a performance bonus.
>
> Please confirm agreement by return e-mail or let's set a call to discuss.
>
> My best,
>
> Aimee

25.     On October 17, 2019, Michael Cioffi, a second Blank Rome attorney who also had significant involvement in representing Andrus Wagstaff in the common benefit attorney's fee dispute matter, replied to Attorney Wagstaff's October 8 email:

Aimee,

It was our pleasure to represent you and Vance and to achieve a great and lucrative result. Hope we can work together in the future.

Again, so sorry for the delay in getting a reply out to you. I have been out of the office (and still am) for about two weeks straight in depositions.

We respectfully disagree with your statement that our incentive bonus does not apply to any increase due to the "pot growing" from $350,000,000 to $400,000,000. As you know, the percentage increase we won on your behalf applies to the "increased pot."

We also respectfully disagree with the remainder of your email in two respects:

1. The agreement between us clearly provides that the starting point for the incentive calculation is $8,715,000. See first bullet on page 3 of the agreement. From this point, we increased the award by $4,285,000.
2. The language of the agreement is unequivocal: "If the FCC or the Court increases this original allocation [the allocation of $8,715,000] by more than $4,000,000, then Blank Rome shall also be paid, in addition to its hourly rate, 10% of said increase [said increase being $4,285,000]."

Separate and apart from the "growing pot" issue above, the fact that we are entitled to a bonus fee of $428,500 cannot reasonably be disputed given the plain language of the agreement. Your reliance on the second and third bullets on page 3 is perhaps creative, but not reasonable because the FCC did not increase the allocation by "1,000,000 – 2,000,000" nor by "2,000,000 – 4,000,000." Instead, the FCC increased the allocation "by more than 4,000,000" thus entitling us to "10% of said increase."

Your position is also unreasonable because it depends entirely on inserting new language into the agreement, essentially re-writing it. The agreement clearly does not say that we are to receive "3% of the **first** 2 million increase" nor does it say "6% of the **remaining increase**." In other words, your position violates a basic and universal principle of contract construction—"The court is not at liberty, either to disregard words used by the parties, descriptive of the subject matter, or of any material incident, or to insert words which the parties have not made use of." *Lamborn v. Nat'l Bank of Commerce*, 276 U.S. 469, 473, 48 S. Ct. 378, 379 (1928).

As we see it, the increased percentage we obtained for you when applied to the increase in the pot from $350,000,000 to $400,000,000 increased your share by $610,000. Our 10% of that amount is $61,000. Thus, our bonus should be $61,000 + $428,[5]00, for a total of $489,[5]00.

Many thanks.

(Emphasis sic.)

26.     The parties engaged in further discussions regarding Blank Rome's performance incentive fee, but these discussions proved unfruitful, and Andrus Wagstaff to date has continued to refuse to pay the full amount of the fee to which Blank Rome is entitled as a result of its representation of Andrus Wagstaff in the common benefit attorney's fee dispute matter.

## FIRST CLAIM FOR RELIEF
### Declaratory Judgment

27.     Blank Rome hereby incorporates the averments contained in Paragraphs 1 through 26 of the Complaint above as if set forth fully herein.

28.     The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 ("DJA"), provides a remedy that may be used by the federal courts in appropriate circumstances.

29.     The DJA provides that a court "may declare the rights . . . of any interested party." 28 U.S.C. § 2201(a).

30.     This Court has constitutional standing because the requirements of a "case" or "controversy" have been met.

31.     There is a substantial controversy between the parties herein, which have adverse legal interests, and that is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

32.     The DJA expressly provides that "further relief" is available based on a request for declaratory judgment. 28 U.S.C. § 2202. Specifically, § 2202 provides that "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202.

8

33.     The relief may take the form of money damages. *Alexander &. Alexander, Inc. v. Van Impe*, 787 F.2d 163, 166 (3d Cir. 1986). Thus, Blank Rome's request for money damages is not inconsistent with a request for declaratory judgment. Similarly, Pennsylvania courts have held that money damages are available under the Pennsylvania Declaratory Judgment Act. *Juban v. Schermer*, 751 A.2d 1190, 200 PA Super 142, ¶ 15 (Pa. Super. 2000).

34.     In this case, a dispute has arisen between Blank Rome and Andrus Wagstaff concerning the payment of legal fees to Blank Rome.

35.     Blank Rome contends that it is entitled to the full payment of $489,500 for services rendered to Andrus Wagstaff in connection with the common benefit attorney's fee dispute matter.

36.     Andrus Wagstaff contends that Blank Rome is entitled to a sum that is less than what is owed.

37.     Andrus Wagstaff has failed and refused to acknowledge that payment of legal fees in the amount of $489,500 is owed to Blank Rome, and has failed and refused to confirm that payment in the amount of $489,500 will be made.

WHEREFORE, Plaintiff Blank Rome LLP respectfully requests that this Honorable Court determine the rights of the parties, and adjudicate and declare:

a.  that Blank Rome is entitled to the full amount of the legal fees owed by Andrus Wagstaff as set forth in the parties' engagement letter, in the amount of $489,500;

b.  for any and all declarations not expressly requested herein regarding the rights and obligations of the parties that are necessary for the resolution of this matter; and

c.  that Blank Rome be granted such supplemental, other and further relief, plus interest, attorney's fees, costs, and such further relief as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### Breach of Contract

38.     Blank Rome hereby incorporates the averments contained in Paragraphs 1 through 37 of the Complaint above as if set forth fully herein.

39.     Andrus Wagstaff entered into a valid and enforceable contract with Blank Rome for legal and related services.

40.     Andrus Wagstaff has breached its contract with Blank Rome, and its underlying contractual obligations to Blank Rome, by failing to pay a reasonable fee for the legal and related services rendered to it by Blank Rome from on or about November 2018 to March 2019.

41.     As a direct result of the breach of contract by Andrus Wagstaff, Blank Rome has and will continue to suffer monetary damages for which Andrus Wagstaff is liable, together with interest and costs.

WHEREFORE, Plaintiff Blank Rome LLP demands judgment in its favor and against Defendant Andrus Wagstaff, P.C. for:

a.   an award of $489,500 in damages, plus pre- and post-judgment interest;

b.   attorney's fees and costs of suit as allowed by contract or law; and

c.   all other and further relief as the Court deems just and proper.

## JURY DEMAND

Blank Rome LLP hereby demands a trial by jury of all issues triable.

Respectfully submitted,

**BLANK ROME LLP**

Frank A. Dante, Esq.
Attorney ID No. 87888
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Tel.: (215) 569-5390
Fax: (215) 832-5390
Email: Dante@BlankRome.com

*Attorney for Plaintiff,*
*Blank Rome LLP*

Dated: December 16, 2019

11

# EXHIBIT A

# BLANKROME

1700 PNC Center
201 East Fifth Street | Cincinnati, OH 45202
blankrome.com

| Phone: | (513) 362-8701 |
| Fax: | (513) 362-8702 |
| Email: | cioffi@blankrome.com |

November 9, 2018

Vance Andrus
Aimee Wagstaff
Andrus Wagstaff, P.C.
7171 W. Alaska Drive
Lakewood, CO  80226

Re:      In Re: C.R. Bard, Inc., Pelvic Repair System Products Liability Litigation, Southern District of West Virginia, MDL No. 2187

In Re: American Medical Systems, Inc., Pelvic Repair System Products Liability Litigation, Southern District of West Virginia, MDL No. 2325

In Re: Boston Scientific, Pelvic Repair System Products Liability Litigation, Southern District of West Virginia, MDL No. 2326

In Re: Ethicon, Inc., Pelvic Repair System Products Liability Litigation, Southern District of West Virginia, MDL No. 2327

In Re: Coloplast Pelvic Repair System Products Liability Litigation, Southern District of West Virginia, MDL No. 2387

In Re: Cook Medical, Inc., Pelvic Repair System Products Liability Litigation, Southern District of West Virginia, MDL No. 2440

In Re: Neomedic Pelvic Repair System Product Liability Litigation, Southern District of West Virginia, MDL No. 2511

Dear Vance and Aimee:

We look forward to representing you and your Firm (collectively, "AW") in connection with the prosecution of an objection to the Common Benefit Fee and Cost Committee ("FCC")'s preliminary written recommendation, which was filed in the referenced matter.  We note that on Monday, November 12, the FCC filed its Petition for an Award of Common Benefit Attorneys' Fees and Expenses, and Memorandum in Support, DE 7288.  We will prepare a forceful opposition to this petition and litigate this issue through an evidentiary hearing.

# BLANKROME

Vance Andrus
Aimee Wagstaff
December 20, 2018
Page 2

For many reasons we believe that your opposition will be most successful if staffed from our Philadelphia and Princeton offices with a team led by two of our most experienced litigators – former federal judge Stephen M. Orlofsky and Laurence S. Shtasel. Both of their CVs/Bios are attached. As you can see, they make a formidable team that will effectively check the aggressive nature of your adversaries.

The terms of this engagement letter and the attached Addendum will govern our representation of you. Upon the completion of our services with respect to this matter or transaction, we hope that you will choose to engage our firm to perform additional services for you. Absent an express written agreement to the contrary, the terms of our engagement set forth in this letter and the Addendum will apply to this matter and to other matters which we agree to undertake on your behalf. The terms of this engagement as provided in this letter and Addendum may only be modified in writing signed by a partner of our firm.

Unless otherwise agreed with us in writing, our base fees will be based on the time devoted to this matter by each attorney, law clerk, reference librarian, paralegal, other legal assistants and members of our E-Discovery, Analysis and Technology Assistance (or "eDATA") staff at their respective hourly rates in effect at the time the services are performed. The hourly rates, which are subject to periodic review and adjustment, are based on such considerations as the skill requisite to perform the particular services properly, the likelihood that the acceptance of the particular employment will preclude other employment by the firm or the lawyers in question, the experience, reputation and ability of the lawyers performing the services, and whether, in the event conflicts arise or have arisen, consents necessary to permit our firm to accept other engagements have been provided by you as requested. The current hourly rates for those persons who are likely to work on your matters are: Judge Orlofsky, $1,140; Laurence Shtasel, $980. Other or different personnel may work on your matter, as well. The current hourly rates for other firm personnel range from $450 to $1,195 for partners, from $440 to $1,070 for counsels, from $315 to $695 for associates, $180 to $450 for paralegals, clerks and librarians, and $165 to $295 for members of our E-Discovery, Analysis and Technology Assistance ("eDATA") staff, if applicable.

The foregoing describes our base fees in this matter. Per our agreement, however, you will be obligated to pay only 75% of our base fees. Each invoice will show the 25% reduction. We have also agreed upon an incentive fee payment in addition to 75% of the base fees, which will operate on a sliding scale, as follows:

# BLANKROME

Vance Andrus
Aimee Wagstaff
December 20, 2018
Page 3

- The FCC's preliminary written recommendation allocates $8,715,000 in common benefit fees and expenses to AW.

- If the FCC or the Court increases this allocation by $1,000,000-$2,000,000, then Blank Rome shall also be paid, in addition to its hourly rate, 3% of that increase.

- If the FCC or the Court increases this original allocation by $2,000,001-$4,000,000, then Blank Rome shall also be paid, in addition to its hourly rate, 6% of that increase.

- If the FCC or the Court increases this original allocation by more than $4,000,000, then Blank Rome shall also be paid, in addition to its hourly rate, 10% of said increase.

In addition to our fees, we will be entitled to payment for disbursements and other charges incurred in performing services as more particularly described in the Addendum.

Fees, disbursements, and other charges will be billed monthly and are payable upon presentation. We expect prompt payment. We are entitled to interest of 6% per annum on all invoices that are not paid within thirty days.

We request that you provide us with an advance of $25,000 towards our fees and the disbursements and other charges to begin the representation. The advance will be deposited in our general trust account. We will charge our fees against the advance and credit them on our billing statements. In the event our fees exceed the advance deposited with us, we will bill you for the excess. Any unused portion of the advance will be returned to you at the conclusion of our services. You agree that we also may request additional advances from time to time based on our estimates of future work to be undertaken, and you will promptly furnish the additional advance requested.

# BLANKROME

Vance Andrus
Aimee Wagstaff
December 20, 2018
Page 4

Please review the terms of this engagement letter carefully, as well as the terms set forth in the attached Addendum.  If you have any questions about them, please give us a prompt call. Otherwise please acknowledge below, sign, scan, and kindly email back to me.

On behalf of Blank Rome LLP, I thank you for the privilege of representing you and look forward to serving your interests.

Very truly yours,

Michael L. Cioffi

MLC:hkc

Acknowledged and Agreed:

Vance Andrus

Date:  1/10/2019

BLANKROME

## ADDENDUM TO ENGAGEMENT LETTER

The policies and practices set forth below apply to our engagement as your counsel:

1. Scope of Representation.

Unless otherwise agreed to in writing or we specifically undertake such additional representation at your request, we represent only the client named in the engagement letter and not its parent, affiliates, subsidiaries, partners, joint venturers, employees, directors, officers, shareholders, members, owners, agencies, departments or divisions. If our engagement is limited to a specific matter or transaction, and we are not engaged to represent you in other matters, our attorney-client relationship will terminate upon the completion of our services with respect to such matter or transaction whether or not we send you a letter to confirm the termination of our representation.

2. Fees.

Hourly rates are subject to periodic review and adjustment. Unless otherwise agreed by us in writing our fees will be based on the hourly rates in effect at the time the services are rendered.

Although we may from time to time for a client's convenience furnish estimates of fees or charges that we anticipate will be incurred on a client's behalf, these estimates are subject to unforeseen circumstances and are by their nature inexact. We will not be bound by any estimates except as otherwise expressly agreed to by us in writing. Furthermore, unless specifically agreed to by us in writing, your obligation to pay our fees and costs incurred in connection with the representation is not contingent upon our achieving any particular result.

Absent a written agreement to the contrary, each client named in the engagement letter is jointly and severally liable for all fees and disbursements.

3. Disbursements and Other Charges.

In addition to our fees, we will be entitled to payment or reimbursement for disbursements and other charges incurred in performing services such as photocopying, messenger and delivery, overnight delivery and air freight, computerized research, videotape recording, travel (including mileage, parking, air fare, lodging, meals, and ground transportation), long distance telephone, telecopying, word processing in special circumstances, court costs, and filing fees. To the extent we directly provide any of these services, we reserve the right to adjust the amount we charge at any time or from time to time, and the charge will approximate our cost. Unless special arrangements are made, fees and expenses of consultants and professionals (such as experts, investigators, witnesses, and court reporters) and other large disbursements will not be paid by our firm and will be the responsibility of, and billed directly to, you or you will be asked to advance to us an estimate of those costs.

# BLANKROME

### 4.   Conflicts of Interest.

It is unavoidable that from time to time conflicts of interest develop between or among our clients, or between clients, or former clients, and prospective clients we wish to represent. In these situations, we are required, if we are authorized to do so, to disclose the conflicts to our clients, former clients and prospective clients and consult with them and to obtain the clients' or former clients' consents before we may proceed.  We wish to confirm that you agree that you will promptly and in good faith consider our requests for a consent.

### 5.   Termination.

You shall have the right at any time to terminate our services and representation upon written notice. Such termination shall not, however, relieve you of the obligation to pay for all services rendered and disbursements and other charges made or incurred on your behalf prior to the date of termination.

We reserve the right upon reasonable notice to cease performing work and to withdraw from the representation (a) with your consent, (b) for good cause, or (c) for any other reason permitted by law.  Good cause may include your failure to honor the terms of the engagement letter, your failure to pay amounts billed in a timely manner, your failure to furnish deposits for fees and costs or to otherwise provide a requested advance for fees and costs, or any fact or circumstance that would, in our view, impair an effective attorney-client relationship or would render our continuing representation unlawful, unethical or unreasonably burdensome.  If we elect to do so, you must take all steps necessary to free us of any obligation to perform further, including the execution of any documents (including forms for substitution of counsel) necessary to complete our withdrawal, and we will be entitled to be paid for all services rendered and disbursements and other charges made or incurred on your behalf prior to the date of withdrawal.

### 6.   Record Retention.

At the conclusion of a matter we often undertake to review the file and discard extra copies of documents and send the balance of the file on that matter to an offsite facility for storage at our expense, unless a client requests us to deliver the files to it.  To minimize the file storage expense, we reserve the right, subject to your contrary direction, to retain files for only five years and to destroy all older files to the extent practicable; provided that estate planning files and trademark and patent files are retained, and we use our reasonable efforts to review old files and retain original legal instruments such as notes, leases, mortgages, deeds, stock certificates, marital equitable distribution agreements and other items of obvious value.  If you wish to handle the disposition of files in a different manner, please let us know.  Otherwise, we will proceed as set forth above.

### 7.   Litigation Hold/Preservation of Documents.

If this engagement involves our representation of you in connection with litigation or an investigation by a governmental agency, it is important that we address the need to put in place a timely and effective program for preserving all relevant documents, including especially your electronic documents and emails.  You should immediately suspend any routine document

# BLANKROME

retention policies that may be in effect and consult with us concerning the institution of effective procedures for document preservation. Failure to do so can impair our ability to represent you in this matter and can affect the outcome.

8.  Electronic Mail and Other Communications.

In the course of our representation of you, we have a duty to preserve the confidentiality of our communications with you and other information relating to the representation. However, you and we need to recognize that all means of communication are, to some degree, susceptible to misdirection, delay or interception. E-mail and cellular telephone communications present special risks of inadvertent disclosure. However, because of the countervailing speed, efficiency, and convenience of these methods of communication, we have adopted them as part of the normal course of our operations. Unless you instruct us to the contrary, we will assume that you consent to our use of e-mail and cell phone communications in representing you.

9.  Insurance.

You agree to determine whether any insurance coverage is or may be available with respect to the subject matter of the engagement and to provide notice to any insurer that may provide coverage. If an insurer pays any portion of our charges, you agree that you will remain responsible for payment of any amounts billed by us but not paid by the insurer, unless we have agreed otherwise in writing.

10.  Written Advices Regarding Federal Tax Issues.

Whenever we provide you with written advice concerning the Federal tax treatment of an item of income, gain, loss, deduction or credit, the existence or absence of a taxable transfer of property, or the value of property for Federal tax purposes, we are subject to stringent requirements imposed by the United States Treasury Department on all tax practitioners, including attorneys. These rules cover much more than formal legal opinions and may apply to any writing relating to any Internal Revenue Code matter, including communications via e-mail and fax. *If we fail to comply with these rules, we may (under certain circumstances) be suspended or disbarred from practice before the Internal Revenue Service, be publicly censured or fined (to the extent that the Secretary of Treasury promulgates regulations requiring any such fines or penalties).*